UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED

JUN 08 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-413-GWU

BRADLEY BOYD,                                              PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 CFR 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to

1

Boyd

Step 4. If no, the claimant is not disabled. <u>See</u> 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 CFR 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 CFR 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.     <u>See</u> 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

symptoms.  20 CFR Section 404.1529 (1991).  However, in evaluating a claimant's

allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine:  (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

Boyd

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

6

Boyd

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Bradley Boyd, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of recurrent major depression with psychotic features, a personality disorder, and borderline intellectual functioning. (Tr. 24). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform his past relevant work in a feed mill and, therefore, was not entitled to benefits. (Tr. 25-7). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 27 years, tenth grade education, and unskilled work experience could perform any jobs if he had no exertional limitations, but did have the following non-exertional impairments. (Tr. 389). He: (1) could not climb ladders or ropes, and

7

Boyd

needed to avoid hazards such as moving machinery or heights; (2) would be restricted to a low stress work environment with simple, 1-2-3 step instructions and repetitive tasks; and (3) would be limited to work which did not involve contact with the general public and which had only infrequent changes in routines. (Id.). The VE responded that such a person could do the plaintiff's past relevant work in a feed mill, and could probably also work in his past job as a collator. (Id.). In the alternative, the VE identified other jobs that the person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 389-90).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff does not dispute the physical findings of the ALJ on appeal, but does argue that the ALJ did not give proper weight to the opinions of his treating sources. One of the sources listed was the staff at the Jane Todd Crawford Hospital, where the plaintiff was admitted on two occasions in 2002 for psychiatric problems. The attending physician was his treating psychiatrist, Dr. James Bland. (Tr. 244-56).

Mr. Boyd had seen Dr. Bland beginning in November, 2001 for complaints of nervousness and depression partially related to a history of childhood sexual abuse.

8

(Tr. 206). He was given a diagnosis of dysthymia and a personality disorder, and a Global Assessment of Functioning (GAF) score of 56 was assigned. (Tr. 207). A GAF score in this range reflects moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. The medications Effexor and Depakote were prescribed. In February, 2002, Mr. Boyd reported that he had tried working at a job for five days but could not handle the stress and was trying to get disability benefits. (Tr. 204).

On the first hospital admission, in April, 2002, Mr. Boyd was initially given a GAF of 20, reflecting his allusions to thoughts of suicide. (Tr. 252). He attributed his depression to several issues, including estrangement from the mother of his children, the loss of a job, and a recent move. (Tr. 244). Eventually, Dr. Bland diagnosed a "situational reaction," and allowed Mr. Boyd to be discharged with instructions to continue following up as an outpatient and taking Effexor. (Id.).

The second hospital admission was for five days in May, 2002, with Mr. Bland complaining of being jittery and hearing voices. (Tr. 255). His family members reported that he was talking to himself and telling lies about being rich that he seemed to believe. (Id.). Dr. Bland added medications, including Dalmane and Zyprexa, although commenting that it was difficult to discern if the patient was driven by delusions and psychosis or was deliberately distorting his condition for the

9

Boyd

possibility of secondary gain.  (Id.).  Dr. Bland's discharge diagnosis was "rule out"
schizophreniform disorder.  (Tr. 255-6).

Subsequent office notes from Dr. Bland reflect that he continued to treat Mr.
Boyd until at least May, 2003.  (Tr. 197-203).  On September 29, 2002, Dr. Bland
wrote a letter stating that his patient remained in active outpatient treatment and his
diagnosis was "major depression without psychotic features" and a "personality
disorder," with a GAF of 50.  (Tr. 201).  A GAF of 50 reflects "any serious impairment
in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."
DSM-IV-TR, p. 34.   The psychiatrist added that   he thought Mr. Boyd would
"experience significant difficulty maintaining a work schedule at this time." (Tr. 201).

Dr. Bland's letter contains the only statement regarding functional capacity
from a treating mental health source.  However, it was not mentioned by the ALJ in
his decision, and it was not discussed by any of the state agency psychologists who
reviewed the record.  (Tr. 271, 305).  The state agency sources appeared to rely
primarily on one-time consultative examinations. (Tr. 208-14, 265-8).  In view of the
importance attached to the opinion of treating physicians under the regulations and
case law, a remand will be required in order to address this issue.[1]

---

[1]While there may be evidence of a subsequent improvement in the plaintiff's
condition, the Court notes that the consultative evaluation by Dr. Wayne Ross Edwards
in September, 2002 contained a primary diagnosis of alcohol abuse (Tr. 269), which was
dismissed by a state agency reviewing psychologist, Dr. Edward Stodola, as not
supported by the evidence (Tr. 271). However, Dr. Stodola then inconsistently stated that

10

Boyd

Moreover, even if the restrictions from the non-examiners should have been relied upon, the hypothetical question did not contain the specific restrictions given by state agency reviewers.  For instance, the most recent state agency reviewers had discussed a "moderately limited ability to complete a normal work day and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 287-90, 305-7).

The decision will be remanded for further consideration.

This the ____8____ day of June, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

he gave Dr. Edwards' report great weight as it was "consistent with the evidence." (Tr. 289).  Treatment notes from the Comprehensive Care Center in 2003 may also reflect an improvement, as shown in a GAF of 60 (Tr. 322, 325), but the scores appear to have been given by a registered nurse practitioner, who would not be an acceptable medical source under the Commissioner's regulations.  See 20 C.F.R. Sections 404.1513, 416.913 (2004).